UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEABODY & COMPANY LLC,

                              Plaintiffs,

          -against-

RODERICK WAYNE, JR. p/k/a RODDY RICCH;
SAMUEL GLOADE p/k/a 30 ROC; LAMAR
ADARIUS MORAGNE; AQEEL QADIR TATE;
KHIRYE TYLER, LARRANCE LEVAR DOPSON;          Case No. 22 Civ. 10316 (AT)
BLUE NIKE PUBLISHING LLC; PEERMUSIC DI,
LTD.; KOBALT MUSIC PUBLISHING AMERICA,
INC.; VOLUME VENTURES PUBLISHING, LLC;
WARNER-TAMERLANE PUBLISHING
CORPORATION; ATLANTIC RECORDING
CORPORATION d/b/a ATLANTIC RECORDS,

                              Defendants.

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Peabody & Company, LLC ("Plaintiff") hereby respectfully submits this

Response and Memorandum of Law In Opposition to Defendants' Motion to Dismiss Plaintiff's

First Amended Complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT AND SUMMARY ...................................................................1

ARGUMENT ...........................................................................................................................3

I.     LEGAL ANALYSIS ....................................................................................................3

     A.     Motion to Dismiss Standard....................................................................3

     B.     Copyright Infringement Standards for Dismissal as a Matter of Law....................3

     C.     Copyright Infringement Claims ...............................................................3

II.     PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR COPYRIGHT INFRINGEMENT...............................................................................................5

     A.     The Ordinary Observer Test Establishes Probative Similarity. ..............................5

     B.     Under the Fragmented Literal Similarity Test, "The Box" Copied Substantial Elements of "Come on Down".........................................................8

     C.     The Copied Musical Elements of "Come On Down" are Distinctive and Have Sufficient Originality Under Any Test. ...........................................9

           1.     The Musical Elements are Quantitatively and Qualitatively Sufficient to Support Infringement. ..............................................9

           2.     The Instrumental Melody and Chord Progression of "Come on Down" is Distinctive and Original and copied by "The Box"...................11

     D.     Substantial Authority Exists Establishing Originality and Substantial Similarly in Similar Circumstances. .....................................................14

           1.     Only a Minimal Degree of Creativity is Needed to Establish Originality .........................................................14

           2.     Combination of Unoriginal Material are still Afforded Copyright Protection .........................................................15

           3.     The Prior Art Cited by Defendants is Substantially Different than the Distinct Musical Elements as Presented in all Four Songs at Issue. .........................................................15

           4.     The Cases Cited by Defendants Are Inapplicable Here...........................16

     E.     The Licensing Agreements and Plaintiff's Copyright Interest in "I Remember" and "Wordplay" Further Solidify Plaintiff's Copyright Infringement Claims. .........................................................17

1.    Plaintiff Does Allege Infringement of Plaintiff's Interest in "I
      Remember" and "Wordplay"....................................................................17

2.    Expert Musicology Analysis Confirms the Same Similar Musical
      Elements Licensed in "I Remember" and "Wordplay" was copied
      from "Come on Down" and utilized in "The Box"..................................18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*,
  11 F.4th 26 (2nd Cir. 2021) ............................................................. 2

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*,
  150 F.3d 132 (2d Cir.1998)............................................................ 4, 5

*Edwards v. Raymond*,
  22 F. Supp. 3d 293 (S.D.N.Y. 2014).............................................. 16

*Estate of Smith v. Cash Money Records, Inc.*,
  253 F.Supp.3d 737 (S.D.N.Y. 2017).............................................. 5

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
  499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)................ 4, 5, 14

*Gal v. Viacom International, Inc.*,
  403 F.Supp.2d 294 (S.D.N.Y. 2005).............................................. 5

*Glover v. Austin*,
  289 Fed. Appx. 430 (2d Cir. 2008)................................................ 8

*Gordon v. McGinley*,
  2011 U.S. Dist. LEXIS 924470 (S.D.N.Y. Aug. 18, 2011) ............ 16

*Gottwald v. Jones*,
  2011 U.S. Dist. LEXIS 128507 (S.D.N.Y. Nov. 3, 2011) ............... 16

*Griffin v. Sheeran*,
  351 F.Supp. 492 (S.D.N.Y. 2019) ................................................. 2, 3

*Guity v. Santos*,
  2019 U.S. Dist. LEXIS 210125 (S.D.N.Y. Dec. 5, 2019) ............... 16

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
  71 F.3d 996 (2d Cir.1995)............................................................. 2, 4, 5, 15

*Lane v. Knowles-Carter*,
  2015 U.S. Dist. LEXIS 143794 (S.D.N.Y. Oct. 21, 2015) .............. 16

*Lessem v. Taylor*,
  766 F. Supp. 2d 504 (S.D.N.Y. 2011)............................................ 11

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014)..................................................................................... 3

*Matthew Bender & Co. v. W. Pub. Co.*,
  158 F.3d 674 (2d Cir. 1998).................................................................................. 2, 3

*McDonald v. West*,
  138 F. Supp. 3d 448 (S.D.N.Y. 2015)................................................................... 16

*New Old Music Group, Inc. v. Gottwald*,
  122 F. Supp. 3d 78 (S.D.N.Y. 2015)................................................... 2, 9, 10, 14

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*,
  558 F.2d 1090 (2d Cir. 1977)................................................................................. 16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)....................................................................................... 6

*Pyatt v. Raymond*,
  462 F. App'x 22 (2d Cir. 2014) ........................................................................... 16

*Repp v. Webber*,
  132 F.3d 882 (2d Cir.1997), cert. denied, 525 U.S. 815, 119 S.Ct. 52, 142
  L.Ed.2d 40 (1998) ...................................................................................... 4, 8, 10

*Ringgold v. Black Entmt' Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997)....................................................................................... 9

*TufAmerica, Inc. v. Diamond*,
  968 F. Supp. 2d 588 (S.D.N.Y. 2013)........................................................... passim

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003).................................................................................... 15

*Ulloa v. Universal Music & Video Distribution Corp.*,
  303 F.Supp.2d 409 (S.D.N.Y. 2004)................................................................... 2, 3

*Vargas v. Pfizer, Inc.*,
  418 F.Supp.2d 369 (S.D.N.Y.2005)..................................................................... 14

*Warner I*, 654 F.2d at 208 .......................................................................................... 4

*Warren v. John Wiley & Sons, Inc.*,
  952 F.Supp.2d 610 (S.D.N.Y. 2013)...................................................................... 3

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir.1996)..................................................................................... 4, 5

## PRELIMINARY STATEMENT AND SUMMARY

Defendants' Motion to Dismiss is improper and is solely based on Counsel's conclusory arguments that the songs at issue "sound nothing alike" despite Plaintiff's detailed and specific allegations and expert musicology analysis which completely rebuts Defendants' arguments. Specifically, Defendants allegations and musicology analysis establishes significant originality of the infringed song, "Come on Down", substantial similarity between "Come on Down" and "The Box", and substantial evidence of copying between the two songs.  Plaintiff further establishes originality and substantial similarity by identifying the fact that two other famous and well-known rap songs, performed by famous rappers and released by major record labels, licensed the exact same compositional musical elements in their respective songs that are now being copied by "The Box".[1]  Although there are differences in those songs in theme, lyrics and instrumentalities, the harmonic backbone of each of these songs is the distinct musical arrangement first performed by Greg Perry and owned by Plaintiff.  Despite this, Defendants' Counsel argues the two songs sound nothing alike.  Defendants attempt to attack Plaintiff's copyright as lacking sufficient originality as simply building blocks or simple chord progressions that are not sufficiently original to warrant copyright protection.  However, Defendants' arguments are not backed by any evidence or expert musicology analysis.  Instead, Defendants' Counsel makes conclusory arguments that are completely rebutted by the allegations and expert musicology analysis as detailed in the First Amended Complaint ("FAC").

Moreover, courts have found similar musical elements and arrangements deserve copyright protection. In *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 606-07 (S.D.N.Y. 2013), the

---

[1] Although not cited in the First Amended Complaint, the musical elements of "Come on Down" that are at issue were also licensed by Beanie Sigel in his song "Look At Me Now" and released by Island Def Jam / Universal Music Group in 2005. (See Wilson Decl., Exhibit A;  https://www.youtube.com/watch?v=7aIqJ11gtWc).

court found a series of five ascending chords that was only three seconds long appearing numerous times throughout the song was quantitatively and qualitatively significant under the fragmented literal similarity test sufficient to state a claim for copyright infringement.  Similarly, in *New Old Music Group, Inc. v. Gottwald*, 122 F. Supp. 3d 78 (S.D.N.Y. 2015) the court found that a reasonable juror could find that defendants wrongfully took certain elements, including a drum part, from plaintiff's work.  This was despite numerous differences in the two songs at issue.  Therefore, dismissal is not proper or warranted under these circumstances. Defendants also ignore significant authority that certain musical elements may be unoriginal, but the combination of those elements when arranged in an original manner deserve copyright protection.  See *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995).

Although courts may dismiss copyright complaints at the motion to dismiss stage, dismissal is not proper as a matter of law when there is competing expert analysis which shows evidence of originality and substantial similarity.  See *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F.Supp.2d 409, 413-14 (S.D.N.Y. 2004) ("It would be improper for this Court, on a motion for summary judgment, to draw its own conclusions from this competing evidence regarding the originality of the Vocal Phrase."); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998) (Courts "treat the question whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder"); *Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 53 (2nd Cir. 2021)( substantial similarity "often present a jury question"); *Griffin v. Sheeran*, 351 F.Supp. 492, 499 (S.D.N.Y. 2019)(the question of infringement should be determined by trial rather than summarily and noting that "the overlap of the protectable elements alone prevents a judgment of noninfringement as a matter of law). If there is a difference of opinion of substantial similarity, that question should be

left to the jury.  Therefore, Defendants' Motion should be denied.

<u>**ARGUMENT**</u>

I.   **LEGAL ANALYSIS**

   A.   **Motion to Dismiss Standard**

   Even in a copyright action, all that is required is a "short and plain statement of the claim

showing that the pleader is entitled to relief."  *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d

610, 614 (S.D.N.Y. 2013). In considering a motion to dismiss, a district court must "accept[ ] all

factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's

favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).

   B.   **Copyright Infringement Standards for Dismissal as a Matter of Law**

   Although courts may dismiss copyright complaints at the motion to dismiss stage, dismissal

is not proper when there is competing expert analysis which shows evidence of originality and

substantial similarity.  See *Ulloa,* 303 F.Supp. at 413-14 ("It would be improper for this Court, on

a motion for summary judgment, to draw its own conclusions from this competing evidence

regarding the originality of the Vocal Phrase."); *Matthew Bender & Co.,* 158 F.3d at (2d Cir. 1998)

(Courts "treat the question whether particular elements of a work demonstrate sufficient originality

and creativity to warrant copyright protection as a question for the factfinder."); *Goldsmith*, 11

F.4th at 53 ( substantial similarity "often present a jury question"); *Griffin,* 351 F.Supp. at 499 (the

question of infringement should be determined by trial rather than summarily and noting that "the

overlap of the protectable elements alone prevents a judgment of noninfringement as a matter of

law).

   C.   **Copyright Infringement Claims**

   To establish a claim of copyright infringement, a plaintiff must prove: "(1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).  Copying may be established "either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998) (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992)).  Here, access is not at issue.

The level of similarity needed to establish copying is now commonly referred to as "probative similarity." *Repp v. Webber*, 132 F.3d 882, 889 n. 1 (2d Cir.1997), cert. denied, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). Once copying has been established, a plaintiff must next demonstrate that the copying was unlawful by showing that there is a substantial similarity between the protectable elements in the two works. See *Castle Rock*, 150 F.3d at 137; *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996).

In determining whether two works are substantially similar, courts in this circuit have applied the "ordinary observer test" and asked, "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Warner I*, 654 F.2d at 208 (citing *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966)). Where a work contains elements that are both protectable and non-protectable, this analysis has been described as the discerning ordinary observer test. See *Williams*, 84 F.3d at 588; *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995). Pursuant to this test, a court must "attempt to extract the unprotectable elements from [its] consideration and ask whether the protectable elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002; *Williams*, 84 F.3d at 588. Even when two works are dissimilar in many respects, substantial similarity between them may

still be found where their similarities are important in the overall context, whether qualitatively or quantitatively. See *Williams*, 84 F.3d at 588.  Even a compilation of unprotectable elements may enjoy copyright protection when those elements are arranged in an original manner. See *Knitwaves*, 71 F.3d at 1003–04 (quoting *Feist*, 499 U.S. at 362, 111 S.Ct. 1282).  Ultimately, as stated in *Estate of Smith v. Cash Money Records, Inc.*, 253 F.Supp.3d 737, 748 (S.D.N.Y. 2017), the question of whether copying is subject to copyright protection is better left to the jury:

> In the end, "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [art], outside of the narrowest and most obvious limits." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 47 L.Ed. 460 (1903) (Holmes, J.). Ultimately, a determination of whether the copied portions [of the song at issue] are entitled to copyright protection depends on a subjective assessment better suited for a jury than a court.

> Additionally, "[s]ubstantial similarity is generally a question of fact for a jury." *Hogan v. DC Comics*, 48 F.Supp.2d 298, 310 (S.D.N.Y.1999).

## II.     Plaintiff has Sufficiently Stated a Claim for Copyright Infringement.

### A.     The Ordinary Observer Test Establishes Probative Similarity.

Multiple tests exist to determine substantial similarity, including, as relevant here, the "ordinary observer test" and the "fragmented literal similarity test." *Estate of Smith,* 253 F. Supp. 3d at 746 (citing *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 140 (2d Cir. 1998)).  "It is only where the points of dissimilarity exceed those that are similar and those similar are – when compared to the original work – of small import quantitatively or qualitatively that a finding of no infringement is appropriate." *Gal v. Viacom International, Inc.*, 403 F.Supp.2d 294, 305 (S.D.N.Y. 2005) (quoting *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992)).  Under the ordinary observer test, the court looks to "the contested [work]'s total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and

common sense." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010).

Defendants' counsel places himself as the ordinary observer and makes the conclusory allegation that an ordinary observer would find the works different and distinct. However, counsel's conclusory arguments do not prove the songs are different and distinct, especially as a matter of law on a motion to dismiss.

Moreover, Plaintiff sufficiently proves and cites evidence that shows other ordinary observers have noticed the similarities between "Come on Down" and "The Box". (See FAC at ¶ 100)("Plaintiff's Original Work and Defendants' Infringing Work are strikingly similar, such that access is presumed by not only ordinary listeners, but by expert musicology analysis."). Importantly, there are observers who have commented on the similarities between the two songs with one YouTube commentator stating "there's definitely some similarities." (*Id*. at ¶ 63)(https://www.youtube.com/watch?v=tbYmd8Tkc4o).[2]  Certainly, a reasonable juror or other ordinary observer could find similarity as well. Listening to the two songs, and even more so when comparing all four songs at issue, the listener will notice the distinct musical arrangement is an important introduction to all four songs. It defines the introduction of the song. Although played by a synthesizer in "The Box", it is notes a distinct similarity to the violin. That is what synthesizers do, they recreate the sounds of other instruments. Then the distinct musical arrangement forms the backbone of the songs at issue. It is not just a one-off appearance of a simple chord progression. The chord progression and musical arrangement is found 18 times in "Come On Down" and 32 times in "The Box".

---

[2] Attached to the Declaration of Joshua D. Wilson ("Wilson Decl.") is a recording of the YouTube video and commentary which discusses the similarities starting at 1:57 of the video.  See YouTube Video attached as Exhibit D to the Wilson Decl.

Furthermore, while Defendants focus on the differences[3] between the two songs at issue (70's soul song v. 2019 hip-hop and trap-rap song)(lyrics about love v. lyrics about amassing wealth and sleeping with women)(live guitar, piano v. synthesizer), Defendants ignore the numerous similarities between the two works is established by expert musicology analysis on a note for note basis.  A listener would certainly hear the similarities which jump out immediately.

A comparison of the other works further establishes ordinary observer similarities.  The fact that these same musical elements have been licensed for use by other rappers and major record labels established the musical arrangement is original and has a significant history of appearing in rap songs.  Defendants basically ignore that two other famous rap/hip-hop artists and record labels licensed the same musical elements from Plaintiff despite their being similar differences in both "I Remember" and "Wordplay".  "I Remember" and "Wordplay"[4] are both rap songs that have distinctively different themes and lyrics than "Come on Down".  There are also differences in the instrumentalities used.  However, this did not stop Island Def Jam (for "Wordplay") and Epic Records (for "I Remember") from properly licensing the musical composition containing the same musical elements from "Come on Down" that were later used in "The Box".  (See ECF Doc. #98-

---

[3] Defendants focus on the differences between the songs as supported by Counsel's conclusory arguments further establishes why this Complaint cannot be dismissed as a matter of law due to Counsel's misunderstanding of the expert analysis.  For example, Counsel argues that Plaintiff erroneously labeled the drums in Defendants' Work with Circle 6 and the keyboard Gb chord with Circle 5.  (See ECF #101 at n. 8).  **This is not accurate.**  The musical analysis in Exhibits 1 and 2 is a Reductive Analysis, meaning all irrelevant gestures are not represented, only the significant similarities.  The circled numbers are different for "The Box" in Exhibit 2, but correspond correctly to the events as they occur and highlights the similarities between the two songs.  In Exhibit 1 ("Come on Down"), Circle 6 identifies the repetition of the opening glissando gesture.  (See FAC at ¶ 85).  In Exhibit 2 ("The Box"), Circle 6 identified the entrance of a Gb major chord which is a chord progression of Ab minor followed by Gb major that repeats through the remainder of the recording, similar to the what the two chord repeat in "Come on Down".  It identifies the entrance of the drums immediately after the first vocal entrance it a way that is similar to the drum entrance in "Come on Down". (See FAC at ¶ 88; Exhibits 1 and 2).  Which is why it would not be necessary to add the "EE-Ooh" from "The Box" because Plaintiff is not claiming a similar arrangement of the "EE Ooh" exists in "Come on Down".
[4] Attached to the Wilson Decl. and provided to the Court are commercially-available recordings of "Look at Me Now" by Beanie Sigel (Exhibit A), "Wordplay" by Young Jeezy (Exhibit B) and "I Remember" by Yo Gotti (Exhibit C).  See Exhibit E; Table Listing the songs, artist, record label, and YouTube links.  As stated by Defendants, the Court can review the similarities in these songs to help in the Court's evaluation of this matter.

1: License for "Wordplay")(ECF Doc. #98-2: License for "I Remember").  Plaintiff's expert conducted a Reductive Analysis of both "I Remember" and "Wordplay" and found that both of these songs featured the same "major musical elements from "Come on Down" and noted that "the key signatures are the same and the signature gestures (repeated glissandos, musical arrangements, chord progressions, etc.) appear in "I Remember" and "Wordplay" in similar ways as they appear in "Come on Down".  (ECF Doc. #98: First Amended Complaint at ¶ 89-94).  The copyright registration for "I Remember" confirms the use of "Pre-existing Material" containing "*elements* from "Come on Down" (Get Your Head Out of the Clouds)' written by Greg Perry and Angelo Bond, performed by Greg Perry.  (See ECF Doc. # 98-3; Copyright Registration)(emphasis added).

Probative similarity between two songs can be based on evidence that two songs had "significantly similar overall rhythmic thrust, feel and tempo," such that "whichever song was created first, the second song was created with reference to and influenced by the first."  *Glover v. Austin*, 289 Fed. Appx. 430, 432-433 (2d Cir. 2008)(noting that there is a reluctance to grant summary judgment based on a defendants' claim of independent creation).  Furthermore, expert testimony may be used to demonstrate probative similarity. See *Repp*, 132 F.3d at 889. Here, any ordinary observer, listening to all four songs side by side will be able to hear the distinct similarities of the musical elements at issue.

### B.    Under the Fragmented Literal Similarity Test, "The Box" Copied Substantial Elements of "Come on Down".

The copying here is actionable under the "fragmented literal similarity [test] [which] exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *TufAmerica,* 968 F.Supp.2d at 597.  Under this test, "the question of substantial similarity is determined by an analysis of 'whether the copying goes to trivial or substantial elements' of the original work." *TufAmerica*, 968 F.Supp.2d

at 598 (citing *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)), and *Williams v. Broadus*, 2001 WL 984714, at *3 (S.D.N.Y. August. 27, 2001)); see also 4-13 Melville and David Nimmer on Copyright (2017) § 13.03. Therefore, any argument that the ascending minor scale is not copyrightable or de minimis is not accurate, nor it is supported by anything other than counsel's own argument. As further explained below, expert musicology analysis has confirmed that the copied elements are a distinctive and substantial feature that appears 18 times in "Come on Down" and 32 times in "The Box". It is a key feature of both songs and is more than just a sequence of unoriginal chords as Defendants suggest.

    C.    **The Copied Musical Elements of "Come On Down" are Distinctive and Have Sufficient Originality Under Any Test.**

        1.    <u>**The Musical Elements are Quantitatively and Qualitatively Sufficient to Support Infringement.**</u>

"The qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which works are compared." *Ringgold v. Black Entmt' Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997). The quantitative component, on the other hand, "generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying" and fragmented literal copying. *Ringgold*, 126 F.3d at 75 (citing NIMMER § 13.03 [A][2] ). Here, not only are the elements copied are distinct and original as explained in the complaint, but the musical elements at issue permeate both songs as it appears 18 times in "Come on Down" and 32 times in "The Box" and "comprises the totality of the harmonic basis of both songs." FAC at ¶ 96(b).

A series of five ascending chords appearing numerous times throughout a song has been held to be quantitatively and qualitatively significant under the fragmented literal similarity test sufficient to state a claim for copyright infringement. *TufAmerica, Inc.*, 968 F. Supp. 2d at 606-

07 (S.D.N.Y. 2013); see also *Gottwald*, 122 F. Supp. 3d 78 (S.D.N.Y. 2015)(finding that a reasonable juror could find that defendants wrongfully took certain elements, including a drum part, from plaintiff's work).  Importantly, the protectable element of the song in *TufAmerica* was only three seconds long and consisted of "five punchy ascending chords."  The Court found it noteworthy that the musical element is repeated seventeen times during the original song and then repeated several times through the infringing song and that the infringing song manipulated the portion of the song in a variety of ways throughout the infringing song.  *Id.* at 606.  Furthermore, the Court refused to dismiss the copyright claims as to both the compositional elements that were copied and the sample.  *Id.* at 607.

In *Gottwald*, the court stated: "[e]ven assuming that the individual elements are not original, however, in considering the 'total concept and feel' of these elements in combination, the Court cannot conclude as a matter of law that the "select[ion], coordinat[ion], and arrange[ment]" of these elements is so unoriginal that the Zimba Ku drum part is not protectable."  *Id.* at 95 (citing *Velez v. Sony Discos*, 2007 WL 120686, at *7 (S.D.N.Y. Jan. 16, 2007) ("unoriginal elements, combined in an original way, can constitute protectable elements of a copyrighted work").  Furthermore, finding that the court could not conclude as a matter of law that no reasonable juror could find the compositional drum part shared substantial similarities because while the portion copied was only one measure of the infringed song, it was repeated 87 of the infringing works 104 measures.  *Id.* at 97 (further noting that the musical elements at issue could be described as the driving grove, or backbone, of the song).  "A reasonable juror could thus find that Defendants 'took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such ... music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'"  *Id.* (citing *Repp*, 132 F.3d at 889).

10

Similar to these cases, the distinctive musical elements of "Come on Down" are both quantitatively and qualitatively significant and permeate throughout both songs to make substantial similarity a jury question and certainly a question that is not ripe for a motion to dismiss. Significantly,

Instead of addressing the obvious similarities that can be heard between the two songs at issue, Defendants focus on the differences and additions between the two songs (i.e., the use of acoustic instruments v. computers and synthesizers, the "EE-Ooh" sound that is repeated throughout "The Box"). However, as stated in *Lessem v. Taylor*: "[t]hough 'numerous differences tend to undercut substantial similarity,' *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980), 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)." 766 F. Supp. 2d 504, 513 (S.D.N.Y. 2011).

Any questions regarding the differences in the two songs should be left to the jury to decide, not as a matter of law. Defendants may present this evidence in its case in chief or on cross-examination, but the fact that there are distinct musical elements which are original to Plaintiff and permeate both songs is sufficient to establish substantial similarity.

### 2. The Instrumental Melody and Chord Progression of "Come on Down" is Distinctive and Original and copied by "The Box".[5]

As pled in the First Amended Complaint, "Musicology analysis confirms that portion of "Come on Down" are distinct, unique and original and the elements copied by Defendants in "The Box" are substantially similar when reviewing through a comparative analysis of the two songs." (ECF Doc. #98: FAC at ¶ 70). Notably, the fact that other rappers and record labels chose "to

---

[5] The six distinct similarities between the two songs are presented in specific and detailed exhibits incorporated into the First Amended Complaint. See FAC ¶ 80-88; Exhibits 1 and 2.

copy elements of "Come on Down" … legally and correctly by licensing the musical composition, granting Peabody & Company its proper copyright interest, and paying royalties." *Id*. at ¶ 71. Notably, these rappers and record labels chose to license the entire musical composition even though they were only utilizing the "same musical elements" that were copied in "The Box". *Id*.; see also ¶ 75 ("the fact that the same musical elements that were copied in "The Box" from "Come on Down" were also copied in "I Remember" and "Wordplay" further establishes that the musical elements from "Come on Down" are sufficiently original to deserve copyright protection, especially considering the same musical elements and musical arrangement were copied from "Come on Down" in all three songs.")

Furthermore, the fact that the distinctive "chord progression is repeated 18 times in " Come on Down" … [and] "repeated 32 times" in "The Box" and "constitutes the totality of the harmonic basis for both songs and permeates [The Box]" is another "indication of its originality and that it originated in "Come on Down" and constitutes copying of the overall theme of "Come on Down" and "The Box" *Id*.; see also ¶ 96(c).   The fact that the musical elements are repeated so many times helps establish that the substantial similarity cannot be decided as a matter of law.  See *TufAmerica*, 968 F.Supp.2d at 598 (the quantitative component of the substantial similarities analysis generally concerns the amount of the copyrighted work that is copied).

The musical elements of "Come on Down" are not only distinct and original, but the copying of those elements in "The Box" is so strikingly similar that substantial similarity is established under any method of analysis.  Both "Come on Down" and "The Box" 'use a distinct melodic instrumental line which has been created from an A flat minor scale."  FAC at ¶ 78(a). These chord progressions are ***"practically identical."*** *Id*. at ¶ 78(b)(emphasis added).   "Come on Down" contains the same chord progression (the Ab minor chord which alternates with a Gb major

chord) as "The Box", however, "The Box" features the insertion of an E chord between the Ab minor and the G flat (known as a "passing" chord). *Id*.

Moreover, the repetition and use of this chord structure is so prevalent in "The Box" that it "permeates" the songs and helps to demonstrate its viability and originality.   *Id*. at ¶ 78(c). Defendants simply cannot rebut the fact that the distinctive chord progression is repeated 18 times in "Come on Down" and 32 times in "The Box" and "constitutes the totality of the harmonic basis for both songs and permeates "The Box" which establishes that there is a substantial similarity of the "overall theme" of "Come on Down" by "The Box." See FAC at ¶ 78(c) and 96(c).  It is clear that "The Box" would not have the same harmonic background and basis without the distinctive chord progression taken from "Come on Down".

The similarities do not end there.  As the expert musicology analysis confirms, the instrumentation of both songs is very similar. *Id*. at ¶ 78(d).  Both songs are performed by utilizing "similar instrumental ensembles."  While Defendants note that "The Box" is played with a synthesizer, they fail to acknowledge that "Come on Down" utilizes a violin, electric bass, and drum section while "The Box" utilizes "a synthesizer rendition of a violin section" "synthesizer rendition of an electric bass" and a "drum machine rendition of a drum set." *Id*.  Just because the sound recording of "The Box" utilizes different instrumentation does not mean they did not copy the distinct compositional arrangement of "Come on Down".

Finally, both the "instrumental arrangement" and the "tone settings" of both songs are strikingly similar.  *Id*. at ¶ 78(e) – (f).  Both songs "contain an introductory passing that introduces the same musical elements in the same order." *Id*. at ¶ 78(e).  "Expert musicology analysis and opinion believes that this occurrence in both songs cannot have occurred randomly or by chance but occurs by design and its appearance in "The Box" means it was copied from "Come on Down"

and presents evidence of premeditated plagiarism." *Id*. Furthermore, according to expert musicology analysis, the tone settings on all the instruments in the ensemble are "strikingly similar". *Id*. at ¶ 78(f). "This is especially evident in the violin sounds used in both songs and the synthesizer sound of the keyboard in "The Box" that replicates the sound of the electric keyboard in "Come on Down". *Id*.

**D.     Substantial Authority Exists Establishing Originality and Substantial Similarly in Similar Circumstances.**

**1.     <u>Only a Minimal Degree of Creativity is Needed to Establish Originality.</u>**

Defendants do not allege that "Come on Down" is not original to Greg Perry or that he copied from any of the other songs they cited that have similar musical elements. Whether a material is copyrightable depends on whether the work is "original to the author." *Feist Publ'ns, Inc.*, 499 U.S. at 345. Originality, as the term is used in copyright, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id*. The "requisite level of creativity is extremely low; even a slight amount will suffice." *Id*. "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id*. As the Supreme Court has explained, if two poets, "each ignorant of the other," composed identical poems, each would be copyrightable since they are both original, though neither is novel. *Id*. at 345–46.

Only a "minimal degree of creativity" must be shown in order for the musical elements Plaintiff is claiming are protected to be considered "original and protectable". See *Gottwald*, 122 F.Supp.3d at 96 (citing *Feist*, 499 U.S. at 345)(holding that the bar for protection based on originality is low making it a question of fact for the jury to resolve and finding that the court could not conclude as a matter of law that no reasonable juror could there were not substantial similarities

between a musical drum part); *Vargas v. Pfizer, Inc.*, 418 F.Supp.2d 369, 372 (S.D.N.Y.2005) (finding a triable issue of fact as to whether the plaintiff's "one-bar percussion pattern" was original and noting that "[t]ypically, when the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve").

### 2.   Combinations of Unoriginal Material are still Afforded Copyright Protection.

While Plaintiff maintains the musical arrangement is significantly original and musicology analysis confirms the same, even if the Court were to find the arrangement utilized common chord progressions, the arrangement is still afforded copyright protection because the combination of elements form a protectable arrangement.  "A musical composition consists of rhythm, harmony, and melody, and ... protects the generic sound that would necessarily result from any performance of the piece. The sound recording, on the other hand, is the aggregation of sounds captured in the recording," *TufAmerica,* 968 F.Supp.2d at 602 (citations omitted).  Even non-banal combinations or compilations of generally unprotectable elements can be afforded copyright protection. *Knitwaves, Inc.*, 71 F.3d at 1003-04 ("[A] work may be copyrightable even though it is entirely a compilation of unprotectable elements."); see also *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003) (unprotected musical elements might be so selected and arranged that they form a whole whose patterns and effects are protectable).

Here, the allegations are that "The Box" and "Come on Down" includes "substantial similarities in melody, form, structure, and function … [and] reach the very essence of each work." FAC at ¶ 62. "[B]oth songs contain a nearly identical instrumental melody."   *Id*. at ¶ 80.  As explained above, musicology analysis confirms the musical element and arrangement from "Come on Down" are unique and distinct.

### 3.   The Prior Art Cited by Defendants is Substantially Different than the

**Distinct Musical Elements as Presented in all Four Songs at Issue.**

Here, Defendants do not claim that Plaintiff was inspired or copied from any of the prior art samples it cites are similar ascending scales.  Therefore, the prior art is irrelevant for the Court's review on a Motion to Dismiss. The issue of the prior art is not at issue unless the defendant can prove that the plaintiff copied from the prior art cited. See *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, n.3 (2d Cir. 1977)(the existence of prior work (whether in the public domain or not) is significant only if (1) the plaintiff copied from that work or (2) the defendant copied from that work)). Ultimately, the substantial similarity test is still what matters, not whether a defendant can find examples of the prior art.  *Id*. (noting that this is a common defense strategy).

Furthermore, when listening to the songs identified in Defendants Exhibit D-1, ECF Doc. #102-2, the ascending scales are markedly different when comparing the similar arrangements of "Come on Down", "I Remember", "Wordplay", and "The Box".   They are much more simple and do not contain the distinct elements cited in the First Amended Complaint. As stated above, this issue is certainly a jury question as the specific citations of originality and substantial similarity are detailed in the Complaint by expert musicology analysis.

**4.      The Cases Cited by Defendants Are Inapplicable Here.**

Defendants cite several cases arguing that courts have dismissed copyright infringement claims where there is no substantial similarity.  These cases are inapplicable and distinguishable. For example, none of the plaintiffs in *Guity v. Santos*, 2019 U.S. Dist. LEXIS 210125, at *15-16 (S.D.N.Y. Dec. 5, 2019), *Lane v. Knowles-Carter*, 2015 U.S. Dist. LEXIS 143794, at *18-20 (S.D.N.Y. Oct. 21, 2015), *McDonald v. Wes*t, 138 F. Supp. 3d 448, 460 (S.D.N.Y. 2015), *Edwards v. Raymond,* 22 F. Supp. 3d 293, 301 (S.D.N.Y. 2014), *Pyatt v. Raymond,* 462 F. App'x 22, 24 (2d

16

Cir. 2014), *Gottwald v. Jones*, 2011 U.S. Dist. LEXIS 128507, at *4-5 (S.D.N.Y. Nov. 3, 2011) or *Gordon v. McGinley*, 2011 U.S. Dist. LEXIS 924470, at *9 (S.D.N.Y. Aug. 18, 2011)(a case involving art photography) plead or presented expert musicology analysis establishing originality and substantial similarity between the two songs at issues as Plaintiff has here.

Defendants also cite cases out of the Eastern District of Louisiana and the Central District of California that are not applicable here.  Defendants do not cite any authority from the Second Circuit, the Southern District of New York, or any other Second Circuit District Courts that have found glissandos are not entitled to copyright protection.  As explained above, this Courts in the Second Circuit have found that the compositional elements of an ascending chord structure can have copyright protection especially when it is a prominent portion and "comprises the totality of the harmonic basis of both songs" that appears eighteen times (18) in "Come on Down" and thirty-two (32) times in "The Box".  FAC at ¶ 96(b).

>   **E.    The Licensing Agreements and Plaintiff's Copyright Interest in "I Remember" and "Wordplay" Further Solidify Plaintiff's Copyright Infringement Claims.**

>>   **1.    <u>Plaintiff Does Allege Infringement of Plaintiff's Interest in "I Remember" and "Wordplay".</u>**

The fact that Island Def Jam Music Group and Epic Records chose to properly license the "substantially similar features and musical elements of the musical composition "Come on Down" in their songs" is an inconvenient fact for Defendants that establishes the originality of "Come on Down" and the copying of substantial similarity of the same musical elements in all four songs. Defendants cannot hide from this fact so Defendants incorrectly allege that Plaintiff does not allege that Defendants Infringed in Plaintiff's copyright interest in "Wordplay" OR "I Remember".  **This is not true.**

Plaintiff identified that it "maintains a copyright interest in those musical compositions."

FAC ¶ 65.  Those interests are identified by the songs respected copyright registration numbers (SR0000616586 – "Wordplay") and (PA0002299093 and SR0000818966 for "I Remember").  *Id*. Plaintiff then alleges "[b]oth of these compositions and recordings utilized similar if not identified elements of "Come on Down" as the Infringing Work ["The Box"] does." *Id*. at ¶ 66. This provides "further evidence of access, originality, substantial similarity and copying of "Come on Down" by Defendants."  *Id*. Moreover, Plaintiff alleges that "substantial portions of "Come on Down" were used by Defendants to create an unauthorized duplication of "Come on Down" so that ***Defendants have infringed Plaintiff's copyright interests*** *in the* ***three recordings."***  *Id*. at ¶ 67 (emphasis added).   Therefore, it is not just copying of a derivative work as Defendants allege.  It is copying of musical compositions of which Plaintiff owns a copyright interest in.  Therefore, it is direct copyright infringement.

> ### 2.     Expert Musicology Analysis Confirms the Same Similar Musical Elements Licensed in "I Remember" and "Wordplay" was copied from "Come on Down" and utilized in "The Box".

However, Plaintiff did not stop with mere allegations of infringement.  Plaintiff provided an Ancillary Musicology Analysis of the similarities between "Come on Down", "I Remember", and "Wordplay" to establish that the same musical elements that were copied from "Come on Down" by "The Box" were also utilized in "I Remember" and "Wordplay".  *Id*. at ¶ 89-97.  The musicology analysis confirms that the same instrumental melodies, chord progressions (including the important repetition of the chord progression), instrumentation, and instrumental arrangements tone settings were utilized in these songs as well.  *Id*.  Importantly, for Island Def Jam for the song "Wordplay", the company specifically licensed the "musical compositions (the "Original Composition") entitled "Come on Down" (Get Your Head Out of the Clouds)".  (See ECF Doc. #98-1: Wordplay License).  Similarly, Epic Records, for "I Remember" requested to use the

"composition entitled "Come on Down" (Get Your Head Out of the Clouds)' ('Original Composition') in connection with the release of the composition entitled "I Remember" ('New Composition') as performed by Yo Gotti."  (See ECF Doc. #98-2: I Remember License).  If these Defendants only wanted to license the sound recording, they could have done so.  However, they properly and legally licensed the musical composition of "Come on Down" because they were utilizing the same unique and distinct musical elements that were also utilized in "The Box".

Furthermore, the copying of these musical elements completely rebuts Defendants' argument that there is no originality or substantial similarity.  "I Remember" and "Wordplay" both have different themes and lyrics and utilize different instrumentation. They are rap songs compared to "Come on Down" which is an R&B Song.  They do not copy the lyrics of "Come on Down". Instead, they utilize the same distinct musical arrangement and chord progression that Defendants term a "glissando".  Similar to "The Box", this musical element repeats throughout the song. However, these parties did what they were legally obligated to do – they licensed the work and granted a copyright interest to Plaintiff.  If Defendants would have done so here, they would not be facing this copyright infringement action.

## CONCLUSION

For the foregoing reason, Plaintiff respectfully asks that the Court deny Defendants' Motion to Dismiss.

Dated: June 9, 2023

Respectfully submitted,

*/s/ Joshua D. Wilson*
Joshua D. Wilson (NY Bar #5825633)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park
28th Floor
New York, NY 10004

Telephone: (615) 772-9007
Facsimile: (615) 970-7490
jdwilson@grsm.com