UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEABODY & COMPANY LLC,

Plaintiff,

-against-

RODERICK WAYNE, JR. p/k/a RODDY
RICCH; SAMUEL GLOADE p/k/a 30
ROC; LAMAR ADARIUS MORAGNE;
AQEEL QADIR TATE; KHIRYE TYLER,
LARRANCE LEVAR DOPSON; BLUE
NIKE PUBLISHING LLC; PEERMUSIC
III, LTD.; KOBALT MUSIC
PUBLISHING AMERICA, INC.;
VOLUME VENTURES PUBLISHING,
LLC; WARNER-TAMERLANE
PUBLISHING CORORPATION;
ATLANTIC RECORDING
CORPORATION d/b/a ATLANTIC
RECORDS,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  02/12/2024

22 Civ. 10316 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Peabody & Company LLC, claims that the 2019 song "The Box"—performed by

Defendant Roderick Wayne, Jr., popularly known as Roddy Ricch ("Ricch")—unlawfully copies

Plaintiff's musical composition of the 1975 song "Come On Down (Get Your Head Out of the

Clouds)." *See* Am. Compl., ECF No. 98. Plaintiff brings this action against Ricch and other

Defendants involved in writing, marketing, and distributing "The Box," asserting a claim for

copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.* Defendants move to

dismiss Plaintiff's complaint. Defs. Mot., ECF No. 100; *see* Defs. Mem., ECF No. 101. For the

reasons stated below, Defendants' motion is GRANTED.

**BACKGROUND**[1]

Plaintiff is a California company owned by Joel and Melodye Perry and formerly owned by Greg Perry.[2]  Am. Compl ¶¶ 2, 38.  "Come On Down," recorded by Greg Perry and released in 1975, "was an immediate hit and peaked at #24 on the R&B charts."  *Id.* ¶¶ 38–40.  Plaintiff owns the musical composition for "Come On Down" (the "Musical Composition"), and has registered its copyright with the United States Copyright Office.  *Id.* ¶¶ 37–39.

In December 2019, Defendant Atlantic Records released "The Box," which also has been registered with the Copyright Office.  *Id.* ¶¶ 46–47.  "The Box" "spent eleven weeks at number one on the US Billboard Hot 100," received three Grammy nominations, and has received millions of streams on Spotify, YouTube, and TikTok.  *Id.* ¶¶ 50, 52–54, 58.

Plaintiff alleges that "The Box" duplicated "certain compositional elements" of the Musical Composition.  *Id.* ¶ 60.  Plaintiff claims, based on "[e]xpert musicology analysis," that the two songs share (1) "nearly identical instrumental melodies"; (2) "practically identical" chord progressions; (3) repeating chord progressions throughout each song; (4) "very similar" instrumentation; (5) "marked similarities" in their introductory passages; and (6) "strikingly similar" tone settings on all the instruments.  *Id.* ¶¶ 79, 96.  Defendants did not license the Musical Composition.  *Id.* ¶ 72.

**LEGAL STANDARD**

I.      Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is

---

[1] The following facts are taken from the complaint, which the Court accepts as true for purpose of this motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).
[2] Greg Perry was a plaintiff in this action but died on March 15, 2023.  ECF No. 99.  The amended complaint names only Peabody & Company LLC as a plaintiff.  *See* Am. Compl.

not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In addition to the complaint itself, the court may also consider documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing the suit.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  In copyright-infringement actions, moreover, "the works themselves supersede and control contrary descriptions of them."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation omitted).  "Courts in this district regularly apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion to dismiss."  *McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015).

II.     Copyright Infringement

To state a claim for copyright infringement, a plaintiff must demonstrate that (1) it owns a valid copyright, (2) the defendants "actually copied the plaintiff's work," either through direct evidence or circumstantial evidence showing access, and (3) the copying is illegal because "a substantial similarity exists between the [defendants'] work and the protectible elements of plaintiff's."  *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (citations omitted).  In their motion, Defendants contest only the third prong.  Defs. Mem. at 10 n.7.

Copyright "protects only that which is original."  *McDonald*, 138 F. Supp. 3d at 454 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).  This principle excludes from copyright "the 'raw materials' of art, like colors, letters, descriptive facts, and . . . the basic building blocks of music, including tempo and individual notes."  *Id.*  Copyright "can protect an author's

original contribution to 'a compilation of unprotectable elements'—specifically, 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Id.* at 455 (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995)).  "Thus, uncopyrightable notes can be assembled into a copyrightable melody." *Id.*

In general, courts in this Circuit deploy the "ordinary observer" test to determine substantial similarity, finding that "two works are substantially similar when an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021), *aff'd*, 598 U.S. 508 (2023) (citation omitted).  To do so, courts examine the works' "total concept and feel." *Knitwaves,* 71 F.3d at 1003.

Courts in this district have set forth an alternate test when the alleged infringement is based upon the defendant's work copying a "portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 597 (S.D.N.Y. 2013) (citation omitted).  Pursuant to this test, called the "fragmented literal similarity" test, courts examine both (1) whether the defendant "cop[ied] important features of the plaintiff's protected expression" and (2) "how much of the plaintiff's protected expression has been copied." *Rose v. Hewson*, No. 17 Civ. 1471, 2018 WL 626350, at *4 (S.D.N.Y. Jan. 30, 2018).

Substantial similarity, although fact-intensive, "is by no means exclusively reserved for resolution by a jury," and courts may resolve the question as a matter of law "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (citation omitted).  Therefore, to determine substantial similarity on a motion to dismiss, "what is required is only a visual or aural comparison of the works." *McDonald*, 138 F. Supp. 3d at 454 (cleaned up).

### DISCUSSION

Under the ordinary observer test, no reasonable jury could find that the works are substantially similar. The Musical Composition is a soul song that contains a melodic tune, while "The Box" is a hip-hop song delivered in a monotone rap. *See Edwards v. Raymond*, 22 F. Supp. 3d 293, 301 (S.D.N.Y. 2014) ("[T]he [p]laintiffs' [s]ong is in significant part a rap song. The [c]hallenged [s]ong has no rapping; Usher sings all of the lyrics."); *Gottwald v. Jones*, No. 11 Civ. 1432, 2011 WL 5289471, at *1 (S.D.N.Y. Nov. 3, 2011) (dismissing plaintiff's claim where the melodies and harmonies "sound nothing alike" (emphasis omitted)). The tempo of the Musical Composition (96 beats per minute) is significantly faster than that of "The Box" (58 beats per minute). Am. Compl. ¶ 78(c). The Musical Composition involves acoustic instruments; the instrumental to "The Box" "consists primarily of synthesizer." *McDonald*, 138 F. Supp. 3d at 460. The "feel" of the two songs is also dissimilar: the Musical Composition is a sentimental song about "love and heartbreak," while "The Box" is a braggadocious song about "amassing wealth, sleeping with multiple women, and being more skilled than other rappers." Defs. Mem. at 12.[3] In light of the significant dissimilarities, no average lay observer listening to the songs would "regard the aesthetic appeal as the same." *Peter F. Gaito*, 602 F.3d at 66 (cleaned up).

Plaintiff can still state a claim for copyright infringement if Defendants copied a protectable portion of Plaintiff's work "exactly or nearly exactly"—the fragmented literal similarity test. *TufAmerica*, 968 F. Supp. 2d at 597. Plaintiff claims that "Come On Down" contains a "distinct musical arrangement" that "defines the introduction of the song" and is repeated throughout to

---

[3] Plaintiff argues that two other rap songs licensed the Musical Composition despite "similar differences." Pl. Opp. at 7–8, ECF No. 106. But, Plaintiff cites no authority to support its contention that another artist's decision to license a musical composition affects the ordinary observer test. Plaintiff also cites one YouTube commentator saying, "[T]here's definitely some similarities." Am. Compl. ¶ 63. The YouTube commentator does not state that the songs are substantially similar, and even if he did, the legal conclusion couched as a factual allegation is "not entitled to significant weight." *Edwards*, 22 F. Supp. 3d at 300.

"form[] the backbone" of the song.  Pl. Opp. at 6–7.  According to Plaintiff, this arrangement is composed of six elements that "The Box" copied: (1) an instrumental melody that consists of an ascending scale played as a glissando, (2) a two-chord progression, (3) the repetition of the chord progression, (4) an instrumental group of a violin, synthesizer keyboard, electric bass, and drum set, (5) the order that the musical elements appear, and (6) the tone setting on the instruments.  Am. Compl. ¶¶ 78, 81.

The individual elements are not protectable as a matter of law.  First, glissandos are "ubiquitous in popular music"; they "belong in the public domain and cannot be exclusively appropriated by any particular author."  *Gray v. Perry*, No. 15 Civ. 5642, 2020 WL 1275221, at *5 (C.D. Cal. Mar. 16, 2020) (citation omitted); *see Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (same for scale step); *Gray v. Hudson*, 28 F.4th 87, 98 (9th Cir. 2022) ("Plainly, no person may copyright the minor scale, as such scales are common musical building blocks belonging to the public.").  As to the second and third elements, because there are a "limited number of notes and chords available to composers," a two-chord progression and chord repetition are too commonplace to be protectable.  *Structured Asset Sales, LLC v. Sheeran*, No. 18 Civ. 5839, 2023 WL 3475524, at *5 (S.D.N.Y. May 16, 2023); *see also McDonald*, 138 F. Supp. 3d at 454, 458 (holding that "common musical technique[s]" and "basic building blocks of music" cannot be copyrighted).

Regarding the fourth and fifth elements, with "a limited universe of instruments to choose from in composing music," the choice of this group of common instruments is not so original as to warrant copyright protection.  *Clanton*, 556 F. Supp. 3d at 334.  Although Plaintiff argues that certain musical elements appear in the same order in both songs—(1) the instrumental melody, (2) the synthesizer keyboard, (3) the vocalist, and (4) the bass and drums—Plaintiff "cannot own the idea of an instrumental intro."  *McDonald*, 138 F. Supp. 3d at 458.  And, Plaintiff does not demonstrate that this broadly defined order of elements has a "distinctive characteristic . . . [such] that any person

hearing it played would become aware of the distinctiveness of the arrangement." *Tisi v. Patrick*, 97 F. Supp. 2d 539, 549 n.3 (S.D.N.Y. 2000) (citation omitted).

Sixth, the tone setting of the instruments is an element of the sound recording, not the Musical Composition of which infringement is alleged. *See Rose*, 2018 WL 626350, at *3 ("In copyright cases alleging infringement of a musical composition, a court considers only a song's composition— the notes, rhythm, and harmony, for example—and does not consider elements of performance of the composition, like the skill with which the composition is played."); Defs. Reply at 10–11, ECF No. 111 (noting that Plaintiff did not respond to this point).

Plaintiff argues that the combination of the elements is protectable, even if the individual elements are not. *See* Pl. Opp. at 15. Plaintiff is incorrect. Although the selection and arrangement of unprotected materials can be eligible for copyright protection, this requires the elements to be "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Structured Asset Sales, LLC*, 2023 WL 3475524, at *2 (citation omitted). Plaintiff cannot "[m]erely list[] random similarities scattered throughout the works." *Montgomery v. Holland*, 408 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (citation and internal quotation marks omitted). Courts have held that the numerosity requirement is stringent. *Nwosuocha v. Glover*, No. 21 Civ. 4047, 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023) (rejecting as many as nine common elements as insufficient as a matter of law); *see Structured Asset Sales*, 2023 WL 3475524, at *4 (collecting cases). Plaintiff points only to five eligible elements throughout the two songs, which is not sufficient for a selection-and-arrangement claim.

Even if this combination of elements were protected, Plaintiff fails to demonstrate that "The Box" in fact "cop[ies] important features of the [] protected expression." *Rose*, 2018 WL 626350, at *4. The rising scale in the Musical Composition—which Plaintiff calls its "signature instrumental melodic figure," Am. Compl. ¶ 80—is expressed differently in "The Box": the first note in the

Musical Composition scale is held longer than the rest of the notes, unlike the rising scale in "The Box."  Defs. Mem. at 14; Defs. Reply at 7.  And, the Musical Composition scale ends with a "rapid, alternating bowing technique known as a tremolando" that is notably absent from "The Box."  Am. Compl. ¶¶ 81, 88.  The chord progression in "The Box" consists of three chords, unlike the two in the Musical Composition.  *Id.* ¶ 78(b).  The chord progressions repeat at different rates throughout the songs, which feature different tempos.  *Id.* ¶ 78(c).  "The Box" uses synthesizers, as opposed to the acoustic instruments contemplated by the Musical Composition.  *Id.* ¶ 78(d).  And, the appearance of the elements in the Musical Composition is different from the order in "The Box": a snare drum appears before the vocals in the Musical Composition, while the vocals precede any drums in "The Box."  Defs. Mem. at 19.  The Musical Composition, therefore, differs from "The Box" in each of the components where Plaintiff claims similarity.  Under the fragmented literal similarity test, Plaintiff has failed to demonstrate that Defendants copied any protectable portion of the Musical Composition.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is GRANTED with prejudice.  The Clerk of Court is directed to terminate all pending motions, enter judgment for Defendants, and close the case.

SO ORDERED.

Dated: February 12, 2024
     New York, New York

_____
ANALISA TORRES
United States District Judge